USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/25/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VEANKA MCKENZIE,                          :

                            Plaintiff,    :        07 Civ. 6714 (WHP)

        -against-                         :        MEMORANDUM AND ORDER

KUMIKI GIBSON et al.,                     :


                                          :

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Veanka McKenzie ("McKenzie") brings this federal civil rights action

against the New York State Division of Human Rights ("DHR"), the State of New York

(collectively, the "State Defendants") and Kumiki Gibson individually ("Gibson") pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. §

1983, and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C § 621 et

seq. ("ADEA"). McKenzie alleges that Defendants discriminated against her because of her

gender, age and sexual orientation, and in retaliation for her complaints that the dress code at

DHR discriminated against women. Defendants move to dismiss all claims pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6). For the following reasons, Defendants' motion to dismiss is

granted in part and denied in part.

BACKGROUND

For the purposes of this motion, the Court accepts the following allegations pleaded in the complaint as true.  McKenzie is a forty-year-old heterosexual female attorney who was employed at DHR for more than thirteen years.  (Second Amended Complaint dated Jan. 31, 2008 (the "Complaint" or "Compl.") ¶ 5.)  In January 2007, Gibson became the commissioner of DHR, and instituted a dress code prohibiting DHR's female employees, but not its male employees, from wearing jeans in the workplace.  (Compl. ¶ 10.)  This policy "was designed to and did cause females, including Plaintiff, to be considered as inferior to male employees, and to humiliate females including [McKenzie]."  (Compl. ¶ 13.)  McKenzie refused to comply with the new dress code, and generally complained to her supervisor about Defendants' "unlawful conduct" beginning in February 2007.  (Compl. ¶¶ 15, 25.)

At some point, "as a consequence of [McKenzie's] complaints," Defendants reassigned McKenzie to work directly for Gibson to perform "menial research assignments with inordinately difficult and impossible-to-meet abbreviated deadlines[.]"  (Compl. ¶ 27.)  Defendants retained private counsel to "subject [McKenzie] to several hours of 'interrogation,'" criticized McKenzie's professionalism in writing and orally, denied her extended sick leave, terminated her insurance coverage and removed her from the payroll.  (Compl. ¶ 16.)

McKenzie filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2007, and received a right to sue letter on December 3, 2007.  (Compl. ¶¶ 2-3.)

DISCUSSION

I. Legal Standard

A district court must grant a motion pursuant to Fed. R. Civ. P. 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate [the case]," Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000), and a Rule 12(b)(6) motion when the plaintiff fails to state a claim for relief. Although a court must decide the jurisdictional Rule 12(b)(1) motion first, Magee v. Nassau County Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998), the same legal standards apply to both motions, Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003).[1]

The Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[i]n order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007)). "[A] plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal quotation marks and citations omitted).

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-

---

[1] Defendants move pursuant to both rules, without specifying which claims they move to dismiss pursuant to which rule. Accordingly, the Court will presume Defendants move pursuant to Rule 12(b)(1) for those claims for which jurisdictional arguments are relevant.

Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' . . . render[ing] the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). However, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers, 282 F.3d at 153 (emphasis supplied).

## II.  Title VII

### A.  Gibson

Individuals are not personally liable under Title VII. Tomka v. Seiler Corp., 66 F.3d 1295, 1313-14 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). Accordingly, McKenzie's Title VII claims against Gibson are dismissed pursuant to Rule 12(b)(6).

### B.  State Defendants

#### 1.  Gender Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). A claim for gender discrimination under Title VII must allege an adverse employment action because of the plaintiff's gender. Patane, 508 F.3d at 112. Moreover, the adverse employment action "must

cause a materially adverse change in the terms and conditions of employment, and not just mere inconvenience[.]." Patane, 508 F.3d at 112 (internal quotation marks and citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotation marks and citation omitted).

McKenzie alleges that DHR instituted a policy in which male employees could wear jeans to work while female employees could not. However, the Complaint fails to allege any facts that suggest that this policy altered the terms or conditions of McKenzie's employment beyond "just a mere inconvenience," see Patane, 508 F.3d at 112. Although McKenzie alleges that she was "humiliate[d]" and felt "inferior" as a result of DHR's dress code, such statements are insufficient to survive a motion to dismiss, see Twombly, 127 S. Ct. at 1964-65. Cf. Ali v. Mount Sinai Hosp., No. 92 Civ. 6129 (JGK) (NG), 1996 WL 325585, at *6 (S.D.N.Y. June 12, 1996) (plaintiff who refused to comply with racially discriminatory dress code was told by supervisor that she "belonged in a zoo"); Equal Employment Opportunity Commission v. Sage Realty Corp., Inc., 87 F.R.D. 365 (S.D.N.Y. 1980) (requirement that plaintiff wear revealing dress subjected her to sexual harassment from the public). Because McKenzie has failed to allege a gender-based adverse employment action, Defendants' motion dismissing McKenzie's Title VII gender discrimination claim against the State Defendants is granted.

2. Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e-3(a). "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane, 508 F.3d at 115. "To establish that [her] activity is protected under Title VII, a plaintiff need not prove the merit of [her] underlying discrimination complaint, but only that [she] was acting under a good faith, reasonable belief that a violation existed." Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 2000). Title VII's retaliation provision protects "informal protests of discriminatory employment practices, including making complaints to management[.]" Sumner, 899 F.2d at 209. While the complaint must allege retaliation as one cause of the adverse action, it need not be the only cause. Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003).

McKenzie alleges that she refused to comply with a dress code she believed was sexist, and that she complained to her supervisor about this "unlawful conduct." (Compl. ¶¶ 10, 13, 25.) McKenzie claims that "as a consequence of [her] aforesaid complaints," Defendants reassigned her to menial tasks, subjected her to hours of interrogation and denied her extended sick leave, among other actions. (Compl. ¶ 27.) Although McKenzie does not state the exact timing of these employment actions or that she specifically complained about the dress code, construing all reasonable inferences in her favor, see Grandon, 147 F.3d at 188, she alleges that

her employer disadvantaged her because of her complaints about, among other things, a dress code she believed was sexist. Defendants argue that McKenzie cited a different reason for her negative treatment in a grievance filed on her behalf by her union, but because she did not refer to or rely on this grievance in her Complaint, this Court cannot consider it on this motion. See Chambers, 282 F.3d at 153. Moreover, the fact that there may have been other reasons for the alleged adverse actions in addition to retaliation does not undermine McKenzie's prima facie case. See Terry, 336 F.3d at 141. Accordingly, Defendants' motion to dismiss McKenzie's retaliation claim against the State Defendants is denied.

### 3. Sexual Orientation

"Title VII does not prohibit harassment or discrimination because of sexual orientation." Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (quoting Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000)). Accordingly, McKenzie's claim of sexual orientation discrimination pursuant to Title VII is dismissed pursuant to Rule 12(b)(6).

## III. Section 1983 Claims

### A. Gibson

#### 1. Gender Discrimination

"Once action under color of state law is established, the analysis for [gender-based employment discrimination claims brought under § 1983] is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). Accordingly, because McKenzie's Title VII gender discrimination

claim against the State Defendants is dismissed, her § 1983 claim against Gibson in her individual capacity is also dismissed.

### 2. Sexual Orientation Discrimination

The only allegation in the Complaint concerning discrimination based on sexual orientation is the conclusory statement that "Defendants engaged upon the aforesaid conduct in order to unlawfully discriminate against [McKenzie] due to her sexual orientation which Defendants regarded as heterosexual, and in favor of employment of persons of homosexual orientation[.]" (Compl. ¶ 23.) Because a "formulaic recitation of the elements" of discrimination is insufficient, Twombly, 127 S. Ct. at 1964-65, McKenzie's § 1983 sexual orientation discrimination claim is dismissed.

### 3. First Amendment

A public employee who claims to have been discharged or disciplined for the exercise of her First Amendment rights must allege, inter alia, that she spoke "as a citizen on a matter of public concern[.]" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). Where complaints are personal in nature and generally related to the plaintiff's own situation within the workplace, such complaints are not matters of public concern. Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991). McKenzie claims that Gibson's conduct violated her First Amendment rights "by suppressing and extinguishing [McKenzie's] speech regarding the sexist dress code of Defendants." (Compl. ¶ 29.) Because McKenzie does not allege she was punished for speaking on matters of public concern, her First Amendment claim is dismissed.

B.  State Defendants

Sovereign immunity derived from the Eleventh Amendment precludes a citizen

from suing a state or state agency pursuant to § 1983, unless the state waives immunity or

Congress validly abrogates it pursuant to § 5 of the Fourteenth Amendment.  Will v. State of

Michigan, 491 U.S. 58, 66, 71 (1989); Bd. of Educ. of Pawling Cent. School Dist. v. Schutz, 290

F.3d 476, 480 (2d Cir. 2002).  A state's waiver of sovereign immunity must be explicit.  College

Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 681-82 (1999).

Moreover, a state that has not expressly waived sovereign immunity may raise the immunity

defense at any point during the proceedings, even if it participated in prior EEOC proceedings.

McGinty v. New York, 251 F.3d 84, 94 (2d Cir. 2001).  Congress did not abrogate state

sovereign immunity in enacting § 1983.  Santiago v. New York State Dep't of Correctional

Servs., 945 F.2d 25, 30 (2d Cir. 1991).  New York has not waived immunity to actions brought

pursuant to § 1983, Koumantaros v. City Univ. of N.Y., No. 03 Civ. 10170 (GEL), 2007 WL

840115, at *6 (S.D.N.Y. Mar. 19, 2007), nor has it expressly waived immunity in this particular

action.  Accordingly, McKenzie's § 1983 discrimination and First Amendment claims against the

State Defendants are dismissed pursuant to Rule 12(b)(1).


IV.  ADEA

A.  Gibson

"[A]n individual defendant may not be liable under the ADEA."  Parker v. Metro.

Transp. Auth., 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000); Hargett v. Metro. Transit Auth., 552 F.

Supp. 2d 393, 407 (S.D.N.Y. 2008). Accordingly, McKenzie's ADEA claim against Gibson is dismissed pursuant to Rule 12(b)(6).

B. State Defendants

Congress did not validly abrogate sovereign immunity in passing the ADEA, nor has New York generally waived immunity to suits pursuant to the ADEA. McGinty, 251 F.3d at 91, 93-95. Accordingly, McKenzie's claim against the State Defendants is barred by sovereign immunity and dismissed pursuant to Rule 12(b)(1).

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss McKenzie's gender discrimination claims, sexual orientation discrimination claims, First Amendment claim and age discrimination claim is granted. Defendants' motion to dismiss McKenzie's Title VII retaliation claim against Gibson is also granted. Defendants' motion to dismiss McKenzie's Title VII retaliation claim against State Division of Human Rights and the State of New York is denied.

Dated: August 25, 2008
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

-10-

*Counsel of record:*

John Ray, Esq.
John Ray & Associates
122 North Country Road
Miller Place, NY 11764-1430
*Counsel for Plaintiff*

Peter Andrew Sistrom, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
*Counsel for Defendants*